**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-01038-CMA-CBS (Consolidated for all purposes with
Civil Action No. 12-cv-01521-CMA-CBS)

GEORGE DARWIN, Individually and on behalf of all others similarly situated,

    Plaintiff,

v.

DANIEL J. TAYLOR,
CARL E. LAKEY, and
KEVIN K. NANKE,

    Defendants.

---

Civil Action No. 12-cv-01521-CMA-BNB

PATIPAN NAKKHUMPUN, Individually and on behalf of all others similarly situated,

    Plaintiff,

vs.

DANIEL J. TAYLOR,
JOHN R. WALLACE,
CARL E. LAKEY, and
KEVIN K. NANKE,

    Defendants.

---

**ORDER ON MOTIONS TO CONSOLIDATE, TO BE APPOINTED
LEAD PLAINTIFF, AND TO HAVE CHOICE OF COUNSEL APPROVED**

---

Several Movants in this securities class action have moved the Court to

consolidate this action with a related one pending in this District, to be appointed lead

plaintiff, and to have their choice of counsel approved. Specifically, the following motions are before the Court: "Motion of Patipan Nakkhumpun to Consolidate Related Actions; to be Appointed Lead Plaintiff; and to Approve Proposed Lead Plaintiff's Selection of Counsel" (Doc. # 17); "Motion of Alfredo Bogliolo[1] for Consolidation of Related Actions; Appointment as Lead Plaintiff; and Approval of His Selection of Lead and Liaison Counsel" (Doc. # 20); and "Motion to Appoint Sunil Varghese & Ancy Ninan as Lead Plaintiffs and to Approve Selection of Counsel" (Doc. # 21).

## I. BACKGROUND

The instant class action was filed with the Court on April 18, 2012. (Doc. # 1.) Also pending in this District is a related class action, *Nakkhumpun v. Taylor, et al.*, No. 12-cv-01521-PAB-BNB, filed on June 12, 2012. Both actions are brought by purchasers of the common stock of Delta Petroleum, Inc. ("Delta"), against various present and former officers and/or directors of Delta. The complaints allege that Defendants violated federal securities laws by knowingly and/or recklessly disseminating false and misleading information, which purportedly inflated the market price of Delta's common stock during the period beginning March 11, 2010, through and including November 9, 2011 (the "Class Period").[2]

---

[1] In the filings in this case, Movant Bogliolo's name is sometimes spelled with an "i" at the end, and sometimes with an "o" – including in the filings he has submitted. For the sake of consistency, the Court will spell it with an "o" at the end.

[2] Technically, the complaint in the instant action asserts a shorter class period (November 9, 2010–November 9, 2011). (Doc. # 1 at 1.) However, only Movants Varghese and Ninan ask the Court to use the shorter class period for purposes of this motion. (*See* Doc. # 21 at 1 n.2.) But as explained, *infra*, at n.5, Varghese and Ninan have effectively withdrawn their motion. As such, the Court will use the purported class period referenced in the text above.

The complaints assert that, during the Class Period, Defendants made false and/or misleading statements and failed to disclose material adverse facts about Delta's business operations, prospects, financial position, and results. The complaints further assert that, on November 9, 2011, Delta disclosed disappointing third quarter 2011 financial results and informed investors that, if its ability to address its liquidity proved unsuccessful, it would need to seek Chapter 11 bankruptcy protection. According to the complaints, these disclosures caused Delta's stock to experience a "one-day decline of 65% on volume of nearly 4.5 million shares." (Doc. # 1 at 2.)

On June 18, 2012, the three motions currently before the Court were filed. (*See* Doc. ## 17; 20; and 21.) *See also* D.C.COLO.LCivR 42.1 ("A motion to consolidate shall be decided by the district judge to whom the oldest numbered case involved in the proposed consolidation is assigned for trial."). The motions are ripe for review.[3]

## II. DISCUSSION

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the reviewing court shall not chose the lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions . . . ." *Id.* Accordingly, the Court will first address the question of consolidation, and will then turn to the issue of lead plaintiff.

---

[3] Movants Varghese & Ninan filed a response on July 9, 2012 (Doc. # 24), as did Defendants (Doc. # 25) and Movant Bogliolo (Doc. # 26). Movant Nakkhumpun's response was filed on July 12, 2012. (Doc. # 27.) Additionally, Bogliolo and Nakkhumpun filed replies on July 23, 2012 (Doc. # 28), and July 26, 2012 (Doc. # 29), respectively.

### A.   CONSOLIDATION OF THE ACTIONS

Under Fed. R. Civ. P. 42(a)(2), "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Movants Nakkhumpun and Bogliolo argue (Doc. ## 18 at 4; 20 at 6), Defendants assent (*see* Doc. # 25 at 2), and the Court agrees, that the instant action and the *Nakkhumpun* action involve common questions of law and fact. Both actions assert the same violations of the Securities Exchange Act of 1934 (the "Exchange Act"), based on the same allegedly wrongful course of conduct, by officers and/or directors of Delta. Consolidating the actions will enhance fairness and judicial economy. *See Harris v. Illinois-California Exp., Inc.*, 687 F.2d 1361, 1368 (10th Cir. 1982). Accordingly, the actions shall be consolidated.

### B.   APPOINTMENT OF LEAD PLAINTIFF

The PSLRA establishes the procedure for appointment of a "lead plaintiff" in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." § 21D(a)(1), 15 U.S.C. § 78u-4(a)(1); *see In re Spectranetics Corp. Sec. Litig.*, 2009 WL 1663953, at *1 (D. Colo. June 15, 2009) (unpublished). The plaintiff who files the initial action must publish notice to the purported class within 20 days of filing the action, informing such class members of their right to file a motion for appointment as lead plaintiff. § 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i). Purported class members then have 60 days to move the Court to serve as lead plaintiff for the class. *Id.* ("not later than 60 days after the date on which the notice is published, any member of the purported

class may move the court to serve as lead plaintiff"). Finally, assuming that these prerequisites are met, the Court shall then "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." § 21D(a)(3)(B)(i), 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§ 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). However, the statute "gives no guidance as to how a presumptive lead plaintiff's financial interest for purposes of making the determination required by subsection (a)(3)(B)(iii)(I)(bb) should be calculated." *In re Spectranetics Corp.*, 2009 WL 1663953, at *2. Regardless, courts routinely look to the movant's financial loss as the most significant factor in assessing his financial interest in the action. *See, e.g.*, *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *4 (N.D. Ill. Mar., 15, 2005) (unpublished) ("the best yardstick by which to judge 'largest financial interest' is the amount of loss, period"); *see also In re Spectranetics Corp.*, 2009 WL 1663953, at *2 (implicitly acknowledging the primacy of determining total loss).[4]

---

[4] In the instant case, the movants each assert that they have the largest financial interest in the action because of the amount of loss they suffered. Therefore, and in accordance with the

As for the purported lead plaintiff needing to otherwise satisfy the requirements of Rule 23, only two of Rule 23(a)'s four requirements – typicality and adequacy – factor into the analysis. *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 658 (D. Colo. 2000). Typicality exists where the claims of the representative plaintiffs "arise out of the same course of conduct and are based on the same theories as those of the absent class members and thus their interests are coextensive with and typical of those of all class members." *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 552 (D. Colo. 1998); *see Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975) (typicality exists "so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory"). The adequacy requirement is satisfied on proof of "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation." *In re Ribozyme*, 192 F.R.D. at 659.

If these prerequisites are met, then the presumption created by the statute can be rebutted only by establishing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."
§ 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

On April 18, 2012, counsel in this action published a notice pursuant to § 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i), advising putative class members of

---

prevailing practice, as indicated in the text above, the Court will look to the total amount of loss in determining which movant has the largest financial interest.

their right to move the Court to serve as lead plaintiff. (*See* Doc. ## 19-3; 20-3; 22-1.) On June 18, 2012, the last day for putative class members to file such a motion, Movants Nakkhumpun, Bogliolo, and Varghese and Ninan did so. (*See* Doc. ## 17, 20, and 21.) Accordingly, the other prerequisites having been satisfied, the lead plaintiff determination here centers first on the amount of loss experienced by each Movant.[5]

1. Amount of Loss

On June 18, 2012, Movant Nakkhumpun filed his motion to be appointed lead plaintiff. (*See* Doc. # 17.) Nakkhumpun's memorandum in support of his motion asserts that he suffered total losses of $255,034.44. (Doc. # 18 at 8.) His economic loss analysis, which takes into account Delta's July 13, 2011 10-for-1 reverse stock split (*id.* at 3 n.3), supports this calculation.[6] (*See* Doc. # 19-2.) Movant Bogliolo filed his

---

[5] As a threshold matter, though, the Court concludes that, based on their response to the competing motions for appointment of lead plaintiff, Movants Varghese and Ninan have effectively withdrawn their motion. Varghese and Ninan "recognize that they do not possess the largest financial interest among the various lead plaintiff movants." (Doc. # 24 at 1.) As such, the Court denies their motion.

[6] Under the PSLRA, if a plaintiff does not sell his securities within the 90-day period immediately following dissemination to the market of the information correcting the alleged omissions and misstatements at issue in the case, the plaintiff's losses are measured as follows:
> [T]he difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1). The "mean trading price" of a security "shall be an average of the daily trading price of that security, determined as of the close of the market each day during the 90-day period" referenced above. 15 U.S.C. § 78u-4(e)(3).

Here, Movant Nakkhumpun asserts that: he purchased 26,275 shares of Delta stock for a total of $263,179.69; he retained those shares beyond the 90-day period; the mean trading price of the shares was $.31 per share; and, he thereby suffered a loss of $255,034.44 ($263,179.69 – (26,275 x $.31)). (*See* Doc. # 19-2.)

7

motion the same day. (*See* Doc. # 20.) Bogliolo initially asserted that he had lost $392,940.35. (Doc. # 20 at 3.) His motion, as well as the supporting loss chart he submitted, indicated that his calculations were not based on stock prices that took into account Delta's 10-for-1 reverse stock split. (Doc. ## 20 at 3 n.2; 20-2 at 1.) However, on July 5, 2012, well after the PSLRA's 60-day deadline, Bogliolo filed a "Corrected PSLRA Certification," asserting losses of $350,131.35. (Doc. # 23.) A review of the corrected loss chart (Doc. # 23-2) indicates that Bogliolo's initial calculations were, in fact, based on stock prices that took into account the reverse stock split. (*Compare* Doc. # 20-2 *with* Doc. # 23-2.) What Bogliolo had evidently failed to do in hi2s initial calculations, however, was to account for the reverse stock split by adjusting the quantity of stock bought or sold in each transaction. So, for example, where Bogliolo had initially reported a November 12, 2010 purchase of 891 shares at $8.00 per share, for a total cost of $7,128 (Doc. # 20-2 at 1), his corrected disclosure lists the transaction as having been a purchase of 89.1 shares at $8.00 per share, for a total cost of $712.80 (Doc. # 23-2 at 17). As this example indicates, Bogliolo's corrected calculations disclose total costs or proceeds, per transaction, that are one-tenth what he initially reported them to be. Accordingly, the "net cost" and "net shares retained" that Bogliolo initially reported, $646,495.35 and 80,750, respectively, should have been listed as $64,649.53 and 8,075, to account for the reverse stock split.

Complicating matters further, Movant Bogliolo also erred in initially listing the "mean trading price" as $3.14. (*See* Doc. # 20-2 at 1.) His corrected filing reflects the same "mean trading price" on which Movant Nakkhumpun relies – *i.e.,* $.31 per share.

(*See* Doc. # 23-2 at 1.)  Accordingly, based on the transactions underlying Bogliolo's initial submission, he: purchased $64,649.53 worth of Delta stock; retained 8,075 shares; and thereby suffered a loss of $62,146.28 ($64,649.53 – (8,075 x $.31)).[7]

Interestingly, however, Movant Bogliolo's corrected disclosure does not show a loss of $62,146.28.  Instead, as indicated previously, he claims a loss of $350,131.35. (Doc. # 23.)  According to Bogliolo, the reason for this is that, after the initial filing, his "counsel subsequently discovered . . . that some of Bogliolo's trades during the class period were excluded from the loss chart." (*Id.*)  In other words, Bogliolo's "corrected" filing does not just correct the errors from the previous submission but, in fact, adds additional transactions that he had not disclosed previously.  Indeed, Bogliolo's initial calculations were based on roughly 300 trades occurring on and between November 12, 2010, and April 19, 2011. (*See* Doc. # 20-2 at 1–6.)  His "corrected" calculations, however, are based on trades occurring on and between March 11, 2010, and April 19, 2011. (*See* Doc. # 23-2 at 1–22.)  By the Court's informal count, Bogliolo's "corrected" filing adds not just "some of Bogliolo's trades" that he had failed to disclose previously but, rather, more than 900 pre-November 12, 2010 transactions, which were not included in his initial loss chart. (*See id.* at 1–17.)  Because Bogliolo's initial filing discloses, based on the correct calculation illustrated above, $62,146.28 in total losses, it is clear to the Court that his "corrected" loss calculation of $350,131.35 is primarily driven by the over 900 new transactions shown in his supporting loss chart.

---

[7] The Court declines to "dismiss[] out of hand," as Movant Bogliolo suggests (Doc. # 28 at 6 n.3), this calculation, which Movant Nakkhumpun advances (*see* Doc. ## 27 at 6; 29 at 3 n.2). It is not a "bald assertion" (Doc. # 28 at 6 n.3); instead, the math used in arriving at the $62,146.28 figure appears correct to the Court.

Movant Bogliolo's belated submission of these transactions brings to the fore the PSLRA's requirement that members of the purported class may move the Court to serve as lead plaintiff "not later than 60 days after the date on which the notice [of suit] is published." § 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i).  Movant Nakkhumpun asserts that the Court should not consider Bogliolo's alleged loss to the extent it is supported by transactions that Bogliolo submitted to the Court for the first time after the 60-day deadline expired.  (Doc. ## 27 at 6–7; 29 at 8–9.)  Bogliolo, arguing against strict enforcement of the 60-day deadline, asks the Court to accept the loss calculation in his subsequent filing because, he asserts, "[c]orrecting errors," which were not made in bad faith, after the 60-day deadline is an insufficient reason for denying a motion to be named lead plaintiff.  (Doc. # 28 at 4.)  Although not a foregone conclusion, the Court determines that, for the following reasons, Nakkhumpun has the better of the argument.

First, Movant Bogliolo's description of his corrected filing is not entirely accurate.  Although Bogliolo admits that his July 5, 2012 filing adds many transactions that were not initially disclosed, he asserts that "rather than a belated attempt to increase Bogliolo's losses, Bogliolo's corrected PSLRA certificate actually decreased his losses."  (Doc. # 28 at 6.)  But, based on the Court's analysis above, this simply is not so.  The transactions underlying Bogliolo's initial filing disclose $62,146.28 in total losses – not the erroneous $392,940.35 loss figure Bogliolo initially calculated.  Accordingly, Bogliolo's corrected filing, which discloses $350,131.35 in total losses, dramatically **increases** his supported losses.[8]

---

[8] Bogliolo's assertion that his corrected filing "actually decreased his losses" is especially perturbing in light of Bogliolo's acknowledgment that the $392,940.35 loss calculation in his initial filing was erroneous.  Essentially, Bogliolo asks the Court simultaneously to disregard his

Second, Bogliolo does not cite, nor is the Court aware of, any cases in which a lead plaintiff has been appointed based on trading information and corresponding losses introduced for the first time after the PSLRA's 60-day deadline expired. The court in *In re Williams Sec. Litig.*, No. 02-CV-72-H(M), 2002 WL 32153476, at *3 n.7 (N.D. Okla. July 8, 2002) (unpublished), which Bogliolo cites, accepted without analysis a movant's submission of some belatedly disclosed stock purchases. But the relevant portion of the order turns on the movant's filing of corrected calculations for transactions that had been timely submitted. *See id.* at *3. Similarly, the court in *In re SLM Corp. Sec. Litig.*, No. 08 Civ. 1029(WHP), 2012 WL 209095, at *8 (S.D.N.Y Jan. 24, 2012) (unpublished), on which Bogliolo also relies, addressed "errors in certifications." In the instant case, as previously explained, Bogliolo's July 5, 2012 filing did not merely correct errors in his initial filing but, instead, introduced hundreds of transactions that he had previously failed to disclose. As such, Bogliolo's reliance on these cases does not avail him.

Third, the authority relied on by Movant Nakkhumpun is persuasive. For example, in *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999), the court refused to consider a movant's supplement to its lead plaintiff motion, submitted after the PSLRA's 60-day deadline, which increased the amount of its purported loss based on previously undisclosed transactions from a larger class period that the movant wanted the court to accept. The court stated, "The PSLRA is

---

initial calculation and to rely on it as proof that his subsequent filing decreased the amount of claimed losses. But because Bogliolo's initial calculation was grossly incorrect, it provides no support for the latter proposition and, for the reasons articulated in the text above, actually demonstrates that Bogliolo's corrected filing significant increases the amount of his claimed losses.

11

unequivocal and allows for no exceptions. [. . .] The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed." *Id.* The court further explained that the movant's motives "are irrelevant to the fact that supplementation is not contemplated by the PSLRA, and do not alter the fact that supplementation after the expiration of the sixty (60) day period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify the time limits expressly provided therein." *Id.* at 819.

Movant Bogliolo urges the Court to disregard *Telxon* because he "submitted a new certificate to correct his actual losses, not to manipulate or inflate his losses." (Doc. # 28 at 5.) However, for reasons already explained, Bogliolo's corrected filing dramatically inflated his supported losses. Such an eventuality is analogous to the *Telxon* court's concern that appointment of lead counsel could be delayed indefinitely if courts accepted belated filings alleging earlier starting dates for the class period. *See In re Telxon Corp.*, 67 F. Supp. 2d at 818. In situations such as the one presented here, allowing claimed losses to be based on transactions disclosed after the 60-day deadline could similarly produce prolonged briefing and delay, as movants continue to identify previously undisclosed transactions that occurred during the purported class period.

Movant Nakkhumpun also relies on *Singer v. Nicor, Inc.*, 2002 WL 31356419 (N.D. Ill. Oct. 17, 2002) (unpublished), and *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Labranche & Co., Inc.*, 229 F.R.D. 395 (S.D.N.Y. 2004). In each case, the respective court declined to consider a movant's belated amendment, which

increased its amount of financial loss.  *Singer*, 2002 WL 31356419, at * 2-3; *Labranche & Co.*, 229 F.R.D. at 410.  Movant Bogliolo asserts that these cases are inapposite because, unlike the movants they discuss, Bogliolo submitted a revised calculation that decreased the amount of his claimed loss.  (Doc. # 28 at 6.)  Again, the Court rejects this argument and agrees with Nakkhumpun's assessment that "[i]nstead of simply correcting his erroneous analysis . . . Bogliolo sought to increase his financial interest . . . by presenting *numerous* new trades that appeared nowhere in his moving papers.  In fact, it is only by way of these additional trades – introduced for the first time after the close of the PSLRA deadline – that Bogliolo can claim to have the largest financial interest in the litigation."  (Doc. # 29 at 8–9 (emphasis in original).)

Finally, the Court notes that, while it understands why a movant might desire to wait until the 60th day to file its motion for lead plaintiff, such an approach entails the risk of later being precluded from submitting new information to support the amount of financial loss.  Removing that risk would subvert the PSLRA's 60-day time limit by allowing the movant to essentially file a placeholder motion, with a speculative loss calculation, subject to further substantiation.  The Court declines to follow such a course especially where, as here, the movant was evidently able to, but did not, timely supply the correct financial loss information.  *See In re Bard Assocs., Inc.*, No. 09-6243, 2009 WL 4350780, at *2 (10th Cir. Dec. 2, 2009) (unpublished) (stating that the district court did not abuse its discretion when it concluded that the movant with the largest financial stake in the outcome of the litigation "demonstrated its financial interest too late because it did not produce assignments of its clients' claims until after the 60-day

deadline" and reasoning, in part, that the movant "has not argued that it was somehow precluded from obtaining its clients' assignments before the 60-day filing deadline").

Accordingly, in the Court's determination, and in light of the material submitted before the expiration of the PSLRA's 60-day deadline, Movant Nakkhumpun has the largest financial interest in the relief sought by the class.

2. Typicality and Adequacy

The Court next considers Rule 23's requirements of typicality and adequacy. Movant Nakkhumpun asserts, and the Court agrees, that his claims "are typical of, if not identical to, the claims of the other members of the class," because he "purchased Delta common stock during the Class Period at prices alleged to have been artificially inflated by the false and misleading statements issued by Defendants" and was "damaged by the alleged fraud." (Doc. # 18 at 11.) Further, the Court agrees that Nakkhumpun will fairly and adequately represent the class, as the Court is not aware of any potential conflicts between him and the other purported class members, and Nakkhumpun's counsel appears qualified, experienced, and able to "vigorously conduct the proposed litigation." *In re Ribozyme*, 192 F.R.D. at 659. (*See also* Doc. # 19-4.)

Although, based on the analysis above, Movant Bogliolo does not have the largest financial interest, the Court notes a further difficulty regarding the typicality requirement that would attend Bogliolo's appointment as lead plaintiff. His filings indicate that, as opposed to Movant Nakkhumpun, Bogliolo did not just buy Delta stock during the purported class period; he bought **and sold** such stock during that time.[9]

---

[9] In fact, a chart Bogliolo prepared shows that, before November 9, 2011 (the date of Delta's corrective disclosures), he sold more than 80% of the Delta stock he had purchased during the purported class period. (*See* Doc. # 26 at 5.)

This could subject Bogliolo to unique defenses based on the timing of his loss, because sales before Delta's corrective disclosures could undercut the theory that Bogliolo relied on Defendant's alleged misrepresentations. *See, e.g.*, *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 & n.23 (E.D. Va. 2000) (noting that a movant was not an adequate class representative because it may have been subject to unique defenses). The possibility of such defenses would weigh against appointing Bogliolo as lead plaintiff, even if he had timely demonstrated the largest financial interest in the litigation. *See, e.g.*, *Irvin E. Schermer Trust by Kline v. Sun Equities Corp.*, 116 F.R.D. 332, 336-37 (D. Minn. 1987) ("the presence of even an arguable defense peculiar to the proposed representative may destroy typicality of the class").

Accordingly, because Movant Nakkhumpun has satisfied the PSLRA's prerequisites, he is presumptively the most adequate plaintiff. No movant or potential class member has asserted that Nakkhumpun "will not fairly and adequately protect the interest of the class" or "is subject to unique defenses that render [him] incapable of adequately representing the class." § 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Thus, the presumption has not been rebutted, and the Court hereby finds Nakkhumpun to be the most adequate plaintiff and, therefore, appoints him lead plaintiff for the consolidated actions.

**C.   APPROVAL OF COUNSEL**

Finally, under 15 U.S.C. § 78u-4(a)(3)(B)(v), "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." As previously indicated, Movant Nakkhumpun has demonstrated that his choice of

counsel, Federman & Sherwood, is "qualified, experienced and able to vigorously conduct the proposed litigation." *In re Ribozyme*, 192 F.R.D. at 659. (*See also* Doc. # 19-4.) As such, the Court approves his selection of Federman & Sherwood as lead counsel.

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that:

1. The "Motion of Patipan Nakkhumpun to Consolidate Related Actions; to be Appointed Lead Plaintiff; and to Approve Proposed Lead Plaintiff's Selection of Counsel" (Doc. # 17) is GRANTED:

    a. The *Nakkhumpun v. Taylor, et al.*, action (No. 12-cv-01521-CMA-BNB), filed on June 12, 2012, is CONSOLIDATED with this action;

    b. Patipan Nakkhumpun is APPOINTED as lead plaintiff for the putative class;

    c. The law firm of Federman & Sherwood is APPROVED as lead counsel;

2. The "Motion of Alfredo Bogliolo for Consolidation of Related Actions; Appointment as Lead Plaintiff; and Approval of His Selection of Lead and Liaison Counsel" (Doc. # 20) is GRANTED IN PART as to consolidation of the actions and DENIED in all other respects;

3. The "Motion to Appoint Sunil Varghese & Ancy Ninan as Lead Plaintiffs and to Approve Selection of Counsel" (Doc. # 21) is DENIED;

4. Under D.C.COLO.LCivR 42.1, Civil Action No. 12-cv-01521-CMA-BNB is REASSIGNED to United States Magistrate Judge Craig B. Shaffer; and

5. All future filings in these consolidated actions shall be captioned as shown below:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 12-cv-01038-CMA-CBS (Consolidated for all purposes with
Civil Action No. 12-cv-01521-CMA-CBS)

PATIPAN NAKKHUMPUN, Individually and on behalf of all others similarly situated,

    Plaintiff,

v.

DANIEL J. TAYLOR,
JOHN R. WALLACE,
CARL E. LAKEY, and
KEVIN K. NANKE,

    Defendants.

DATED: October  23 , 2012

                          BY THE COURT:

                          CHRISTINE M. ARGUELLO
                          United States District Judge