**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-01038-CMA-CBS (Consolidated for all purposes with
Civil Action No. 12-cv-01521-CMA-CBS)

PATIPAN NAKKHUMPUN, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

DANIEL J. TAYLOR,

      Defendant.
_____

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENT AND BRIEF IN SUPPORT**
_____

Lead Plaintiff Patipan Nakkhumpun ("Plaintiff," "Lead Plaintiff" or "Nakkhumpun"), submits this Unopposed Motion and Memorandum for an Order: (1) granting preliminary approval of the proposed settlement (the "Settlement") between Plaintiff and Defendants (collectively, the "Parties"); (2) preliminarily certifying a settlement class: (3) approving Plaintiff's proposed form and method of giving notice of the pendency of this action and the Settlement to Class Members; (4) directing that notice be given to Class Members; and (5) scheduling a hearing at which time the Court will consider (a) the  Parties' request for final approval of the Settlement, the proposed Plan of Allocation and entry of the final Judgment and order of dismissal with prejudice; and (b) Plaintiff's Counsels' motion for an award of attorneys' fees and reimbursement of litigation expenses and an award to the Lead Plaintiff for reimbursement for his time and expenses in overseeing this matter.

Submitted herewith is the Declaration of William B. Federman in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (the "Federman Decl.") and the Exhibits attached thereto.[1]

## I.   INTRODUCTION

Plaintiff seeks approval of the proposed Settlement of his claims against Defendant Daniel J. Taylor ("Taylor") for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.  Plaintiff's claims are brought on behalf of himself and other purchasers of Delta Petroleum Corporation's ("Delta" or the "Company") common stock during the period March 11, 2010 through November 9, 2011, inclusive, (the "Class Period"). The Parties executed a Stipulation of Settlement ("Stipulation") on September 18, 2015.  Federman Decl. at Exhibit 1.

Plaintiff submits that the proposed $3.2 million cash payment in settlement of the claims pending in this action satisfies the requirements for preliminary approval under Rule 23(e), Fed. R. Civ. P.  The proposed Settlement will recover approximately 23% of Plaintiff's damages expert's most aggressive estimate of aggregate damages ($13.65 million), which exceeds historical median settlement recoveries as a percentage of estimated damages in securities class action lawsuits of this size by approximately *double*.  The Settlement is fair considering the sizeable recovery to the Class and the risks and costs attendant to further protracted litigation.

---

[1] Unless otherwise indicated herein, capitalized terms shall have the same meanings as used in the Stipulation of Settlement filed contemporaneously herewith.

The Settlement resulted from extensive arms-length negotiations between the Parties.   Federman Decl. at ¶¶4-5.   Plaintiff's Counsel was well informed about the strengths and weaknesses of the case as a result of their extensive investigations, motion practice, appellate briefing, consultation and discussions with damages and market efficiency experts, and consideration of all arguments presented.   *Id.*

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges Defendant Taylor, former Chairman of the Board of Delta, violated Section 10(b) of the Exchange Act by making materially false and misleading statements in a press release issued July 7, 2010.  Specifically, Plaintiff asserts that in March 2010, Delta announced a proposed deal whereby Opon International, LLC ("Opon") would purchase a 37.5% interest in Delta's assets owned in the Vega Area of the Piceance Basin for $400 million.   In May and June 2010, Delta issued statements assuring the market that the deal was proceeding toward closing.   In July 2010 Delta, and specifically Defendant Taylor, announced in a press release that Delta had terminated the deal for the purported reason that Opon was unable to obtain financing for the $400 million purchase price and further asserted confidence in the value of the assets.   However, Plaintiff alleges through multiple confidential witnesses including Opon's CEO, that Opon did not terminate the offer because it was unable to obtain financing; instead, Opon withdrew its offer after it conducted due diligence and determined the assets were not worth nearly the $400 million price.   Thus, Plaintiff alleges, investors were materially mislead about the value and marketability of Delta's Vega Area assets.   Plaintiff contends that he and prospective Class members suffered damages when on November 9, 2011,

Delta announced that it had not received any offers to purchase the Company or its assets and that Delta's Vega area assets were impaired by $420 million.  In response to this news, Delta's share price fell $1.34 per share to close at $0.71 per share on November 10, 2011 — a one-day decline of 65% — on high trading volume.

## III.    PROCEDURAL HISTORY

After being appointed Lead Plaintiff, Plaintiff Nakkhumpun filed a Consolidated Complaint alleging claims on behalf of purchasers of the common stock of Delta against several executive officers and directors of Delta, including Taylor, for violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.  Dkt. No. 36.

On September 30, 2013, the Court granted Defendants' motion to dismiss with prejudice, dismissing all claims against all defendants.  Dkt. No. 48.  Plaintiff timely filed a motion for leave to amend, with a proposed Amended Complaint.  Dkt. No 51.  The court denied Plaintiff's Motion. Dkt. No. 58.

Plaintiff timely appealed the Court's dismissal order and order denying leave to amend to the U.S. Court of Appeals for the Tenth Circuit.  On April 7, 2015, the Tenth Circuit affirmed the dismissal of Plaintiff's claims, except for the claims against Defendant Taylor relating to the alleged misrepresentations made by him in the July 7, 2010 press release concerning the termination of the proposed Opon transaction.  Dkt. Nos. 64-65.

## IV.    THE SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

### A.    Standards for Preliminary Approval

Courts strongly favor settlement as a method for resolving disputes. *See Desktop Direct, Inc. v. Digital Equip. Corp.,* 993 F.2d 755, 758 (10th Cir. 1993) (agreeing that

"encouragement of out-of-court settlement is desirable"), *aff'd,* 511 U.S. 863 (1994). This is especially true in complex actions such as this one. *Big O Tires, Inc. v. Bigfoot 4x4, Inc.,* 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

To ensure the fairness of any class action settlement, courts engage in a two-step process. *Rhodes v. Olson Associates, P.C.,* 2015 WL 3657586, at *2 (D. Colo. June 12, 2015) (Arguello, J.) (citing NEWBERG ON CLASS ACTIONS § 13:12 (5th ed.)).  In the first step, the court makes a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms. *Id.*  The object of preliminary approval is for the court "to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." *Id.* (quoting NEWBERG ON CLASS ACTIONS § 13:13).  If the settlement is preliminarily approved, the Court enters a preliminary approval order directing the preparation of notice to class members and setting forth a schedule for objections. *Id.* (citing NEWBERG ON CLASS ACTIONS § 13:12).  The second step involves a final fairness hearing, at which point class objectors (if any) may provide testimony, and the court again decides whether the settlement is fair, reasonable, and adequate. *Id.*

Plaintiff requests that the Court take the first step in this process.

**B.    Preliminary Fairness Review**

Under F.R.C.P. 23(e)(2), a class action settlement must be "fair, reasonable and adequate."  In the Tenth Circuit, the following factors are analyzed in determining whether this standard is met: "(1) whether the proposed settlement was fairly and honestly

negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir.2002). *Rhodes,* 2015 WL 3657586 at *2.  Although the Court need not consider these factors in depth until the final approval hearing, they can provide a useful guide at the preliminary approval stage. *Rhodes*, 2015 WL 3657586 at *2.

### 1.    The Settlement Was Fairly and Honestly Negotiated

"The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.,* 2008 WL 384579 at *5 (D. Colo. Feb. 11, 2008) (citation omitted).

The record demonstrates that the Settlement was fairly and honestly negotiated. This action has been pending for over three years and has been up on appeal and back again.  The Parties have thoroughly briefed and explored the issues.  Indeed, by the time the Settlement was reached Plaintiff had: (1) conducted extensive investigations which included, among many other things, interviewing confidential witnesses (including former high-ranking employees of Delta and the CEO of Opon); (2) fully considered and briefed a response to Defendants' motion to dismiss; (3) fully considered and briefed Plaintiff's motion to amend and Defendants' opposition to same; (4) fully briefed an appeal of the Court's dismissal order; and (5) fully considered and partially briefed a response to

Defendant Taylor's petition for *writ of certiorari*. Federman Decl. at ¶5.  Each side has expended substantial time and expense consulting with experts. *See id*.  Moreover, the Parties also engaged in an early mediation with a respected national mediator, former United States District Judge Layn R. Phillips, that ultimately proved unsuccessful. *Id.* Thus, there can be no doubt that the Parties fairly and honestly negotiated the Settlement.[2]  *See Rhodes,* 2015 WL 3657586, at *2 ("There is no indication that the settlement was the product of collusion. Additionally, the parties 'vigorously advocated their respective positions throughout the pendency of the case.'" (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)).

### 2.      The Judgment of the Parties' is That the Settlement is Fair and Reasonable

The Parties' judgement is that the proposed Settlement is fair and reasonable. Federman Decl. at ¶6.  Moreover, Class Counsel are experienced in securities class action litigation, *see* Federman Decl. at Exhibt 3, "and weight is given to their favorable judgment as to the merits, fairness, and easonableness of the settlement." *Rhodes,* 2015 WL 3657586, at *2; *Lucas v. Kmart Corp.,* 234 F.R.D. at 695; *see also Marcus v. Kansas,* 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

### 3.      The Litigation Involves Serious Questions of Law and Fact

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits, it is clear that the parties could reasonably conclude that there are serious

---

[2] As part of the Settlement, Defendants agreed to produce, for purposes of confirmatory discovery, documents in the possession of Defendant Taylor, which Plaintiff will review and consider before presenting the Settlement for final approval. *Id.* at ¶3.

questions of law and fact that exist such that they could significantly impact this case if it were litigated." *Lucas v. Kmart Corp.,* 234 F.R.D. at 693-94 (internal citation omitted); *see also Rhodes,* 2015 WL 3657586 at *2.

This case faced serious obstacles from the beginning. Initially, the Court dismissed Plaintiff's claims against all parties; and while Plaintiff was able to obtain a partial reversal on appeal, all but a fraction of those claims and parties remain dismissed. With respect to the sole remaining claim, Defendants have contested all elements and particularly loss causation and damages. For instance, Defendants argue that Delta adequately disclosed the risks that the Vega assets might lose value due to decreases in oil and natural gas prices and that Plaintiff cannot demonstrate that the alleged misrepresentations by Taylor covered up the risk. Defendants further contend that because Delta's announcement on November 9, 2010 did not specifically discuss the Opon negotiations, Plaintiff will not be able to show that the announcement cast any doubt on the veracity of Defendant Taylor's earlier statements. Thus, Defendants contend that Plaintiff's and the Class' losses were caused by intervening events that transpired during period between the alleged July 7, 2010 false and misleading statements and the November 9, 2010 corrective disclosures. While Plaintiff disagrees with Defendants' positon on both the facts and the law, there is no guarantee that the Court (on motion for summary judgment) or a jury would find Plaintiff's arguments more persuasive. Indeed, although the Court found — on Plaintiff's motion for leave to amend following dismissal — that Plaintiff had sufficiently alleged loss causation, it found it had done so just barely. Order at 10-11 (Dkt. No. 58).

4.    **The Value of the Immediate and Certain Recovery Outweighs the Mere Possibility of Future Relief after Protracted Litigation**

The principal reason for the Settlement is the significant present benefit that it provides to the Class.  However, this benefit must be weighed against the risk that the Class would receive little or no recovery had Plaintiff elected to continue litigating.  As discussed below, there were considerable risks in continuing to litigate this action.  Thus, it is "very likely that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; a trial, post-trial motions, and an appeal could reduce the net value of any recovery." *Rhodes,* 2015 WL 3657586, at *2.

Securities fraud cases like this Litigation are notoriously complex and difficult to prove, and rarely is there concrete direct evidence of fraudulent intent.  Although Plaintiff believes his claims are meritorious, Defendant Taylor (the only remaining defendant) vigorously argued that Plaintiff would not be able to establish falsity, materiality, scienter and loss causation.  Even the pleading sufficiency of Plaintiff's remaining claim is not settled due to Defendant Taylor's petition for *writ of certiorari* pending in the Supreme Court, which seeks review of the Tenth Circuit's reversal of the Court's dismissal order.

Moreover, the damages in this case are small and highly disputed.  The proposed Settlement will recover approximately 23% of Plaintiff's damages expert's most aggressive estimate of aggregate damages ($13.65 million).  However, recovery of the entire $13.65 million in potentially compensable damages, assumes, first, that a jury would find Defendant Taylor liable for his statements in the July 7, 2010 press release.  Second, and significantly, it assumes that the entire $1.34 share price drop following the November 9, 2011 disclosure was caused by Defendant Taylor's July 7, 2010 statements.

Such a showing could prove difficult, as Defendants' expert estimated that the losses attributable to Defendant Taylor's July 7, 2010 statements range from $0 to $5 million. However, even assuming the highest possible damages of $13.65 million — without discounting the estimated damages for the risk that Plaintiff could fail to establish loss causation (at least in part) — the proposed Settlement is <u>substantially higher</u> than comparable securities class action settlement recoveries as a percentage of estimated damages.  Indeed, the median recovery in settlements of securities class actions with damages estimated at less than $50 million for the year 2014 and the period 2005 to 2013, respectively, was 9.9% and 11.7%.  *See* "Securities Class Action Settlements: 2014 Review and Analysis," *Cornerstone Research* at 9, Exhibit 2 to Federman Decl.  This Settlement, representing 23% of the maximum potentially recoverable damages, is approximately <u>double</u> these comparable median settlement percentage recoveries.

By settling the action now, Plaintiff and the Class can share in significant all-cash compensation and avoid the risk that continued litigation may result in a smaller recovery or quite possibly no recovery at all.

V.    **CERTIFICATION OF THE CLASS IS PROPER**

In preliminarily approving a proposed settlement, the Court should first consider whether to conditionally certify a settlement class. *See Amchem Products, Inc., v. Windsor,* 521 U.S. 591, 620 (1997).  Notably though, courts considering class certification as part of a preliminary settlement approval apply a 'more relaxed' standard" than in the typical certification process. 4 NEWBERG ON CLASS ACTIONS § 13:18 (5th ed. 2012).

A class is to be certified if it meets the requirements of Fed. R. Civ. P. 23(a) and (b).   The proposed Class, as defined in the Stipulation at ¶1.28, meets these requirements.   *See City Partnership Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 581 (D. Colo. 2002) (finding securities claims "particularly well suited for class action status").

## A.    The Requirements of Rule 23(a) are Satisfied

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.   Delta was nationally traded with 286,027,476 shares of common stock issued and outstanding as of April 26, 2011.   *See* Federman Decl. at Ex. 4.   Delta had millions of shares trading during the Class Period, with 4.5 million shares traded on November 10, 2011 alone.   *Id.* Thus, the proposed Class of investors who purchased Delta common stock during the Class Period contains at least hundreds, if not thousands of persons.    Under these circumstances, the Class clearly meets Rule 23(a)(1)'s numerosity requirement. *See In re Ribozyme Pharms., Inc. Sec. Litig.,* 205 F.R.D. 572, 578 (D. Colo. 2001) (noting that numerosity is assumed in the case of a nationally traded security); *In re Intelcom Grp., Inc. Sec. Litig.,* 169 F.R.D. 142, 147-48 (D. Colo. 1996).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This case presents several common issues of law and fact, including: (a) whether Defendant Taylor publicly misrepresented and/or omitted material facts concerning the termination of the Opon transaction; (b) whether he acted with scienter in making such alleged misrepresentations or omissions; and (c) whether the alleged false and misleading statements caused Delta common stock to trade at artificially inflated prices. Where, as here, the allegations of wrongdoing involve a common course of conduct, class

members' claims will clearly involve common questions of law and fact. *See Ribozyme,* 205 F.R.D. at 578 (Rule 23(a)(2) "does not require that the injuries of all class members be identical; 'only the harm complained of must be common to the class'").  Thus, "[e]ven one common issue of law or fact will suffice to establish Rule 23's commonality requirement." *In re Crocs, Inc. Sec. Litig.,* 306 F.R.D. 672, 686 (D. Colo. 2014).

Rule 23(a)(3) requires Plaintiff's claims to be typical of the class' claims. The facts surrounding all the claims need not be identical, but the claims of the class representative and the class must be "based on the same legal or remedial theory." *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988).  Here, Plaintiff's claims are typical because "the claims brought by the Lead Plaintiff[] arise out of the same course of conduct by Defendants and rest on exactly the same legal theory, securities fraud, as those of the potential class members." *Ribozyme,* 205 F.R.D. at 578; *see Intelcom Group,* 169 F.R.D. at 148-49.

Rule 23(a)(4) requires that the plaintiffs fairly and adequately protect the interests of the class.  The Tenth Circuit has identified two questions relevant to the adequacy inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d at 1187–88 (citation omitted).  Here, there is no conflict of interest between Plaintiff (and his Counsel) and the Class; Plaintiff and the Class similarly sustained losses as a result of the alleged material miresprepresentations. Further, Plaintiff has shown his commitment to this Litigation. Plaintiff filed the first complaint that extended the Class Period to cover the claims concerning the Opon transaction (the only remaining claims),

he has submitted documents to Lead Counsel, reviewed and approved multiple complaints and briefs, kept abreast of the Litigation's status, reviewed orders from the Court, and provided input on the settlement discussions, including approving the proposed Settlement. Federman Decl. at ¶10.  Lead Counsel has also demonstrated their commitment to the prosecution of the Litigation, as it was Lead Counsel that investigated and pled Plaintiff's claims, briefed Defendants' motion to dismiss, appealed the Court's dismissal order, and obtained partial reversal from the Tenth Circuit.  In short, Plaintiff and Lead Counsel's efforts have made this favorable Settlement possible.

### B.    The Requirements of Rule 23(b) are Satisfied

Rule 23(b)(3) requires that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.

Common issues of law and fact predominate in this action.  Where, as here, plaintiff alleges that defendants' alleged misrepresentations inflated the stock price, the issues of law and fact that flow from these activities predominate over any individual issue. *See Ribozyme,* 205 F.R.D. at 578-79.  Moreover, the Supreme Court in *Amchem* explicitly held that when considering whether plaintiffs had satisfied Rule 23 for purposes of certifying a settlement class, the court "need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be <u>no trial</u>." 521 U.S. at 593 (emphasis added).  Thus, while reliance is an element of Plaintiff's Section 10(b) claims that Plaintiff is required to prove <u>at trial</u>, the issue of reliance does not impede certification of a settlement class.  *In re American Intern. Group,* 689 F.3d

229, 243 (2d Cir. 2012); *Stanaford v. Genovese,* 2015 WL 4930568, at *5 (S.D. Fla. Aug. 17, 2015).  Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem Products,* 521 U.S. at 625.

Here, also, a class action is superior to other methods of adjudication. The class action device is particularly appropriate for addressing claims of violations of the securities laws. *See Esplin v. Hirsch,* 402 F. 2d 94, 99 (10th Cir. 1968). As in this case, such claims typically involve a large number of investors who are geographically dispersed, and whose relatively small claims make it prohibitively expensive to seek recovery through individual litigation. *See Ribozyme,* 205 F.R.D. at 579.  Without class action treatment, most investors simply would be unable to seek redress for their injuries.

## VI.     THE FORM OF NOTICE SHOULD BE APPROVED

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. Rule 23(c)(2)(B).  Thus, Rule 23(c)(2) requires the "best practicable notice," while Rule 23(e) requires notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." Neither Rule 23 nor due process requires actual notice to each possible class member.

Plaintiff proposes two forms of notice: a long form notice ("Notice") and a publication notice ("Publication Notice").  *See* Stipulation at Exhibits A-1, A-3.  The Notice

will be sent by mail to all identifiable Class Members at their last known address, and the Summary Notice will be published once in *Investors' Business Daily* and issued once electronically over *PR Newswire*, an internet wire service, in order to notify all Class Members, including those whose addresses cannot be provided or will not otherwise receive a copy of the Notice.  *Id*. at Exhibit A at ¶¶9-13.  The Notice describes the Litigation and defines the Class; describes the claims, defenses, and issues on which the Parties disagree; notifies Class Members of their rights to appear, object, and opt out; clearly explains the binding nature of the Settlement; and sets forth the plan of allocation pursuant to which the Net Settlement Fund will be allocated among Class Members.  *Id*. at Exhibit A-1.  The Publication Notice provides a summary of the main details of the Litigation and notifies the Class of the final approval hearing.  *Id*. at Exhibit A-3.  Consistent with the PSLRA, the Notice also provides the relevant statement of recovery, potential outcomes of the case, awards for reimbursement sought, attorneys' fees and expenses sought, attorney information, and the reasons for the Settlement.  *Id*; *see* 15 U.S.C. § 78u-4(a)(7).  In short, the proposed Notice meets the requiremens of both Rule 23 and the PSLRA.  *See id; Rhodes*, 2015 WL 3657586 at *2.

Because the Notice and Summary Notice give absent Class Members reasonable notice of their rights, the Court should approve them.

## VII.   CONCLUSION

For the reasons set forth herein, Plaintiff's Unopposed Motion for Preliminary Approval of Settlement should be granted.  For the Court's convenience, a chart of the schedule proposed in the Preliminary Approval Order is attached hereto as Appendix 1.

Dated: September 18, 2015          Respectfully submitted,

                                  /s/ William B. Federman
                                  William B. Federman (admitted *Pro Hac Vice*)
                                  **FEDERMAN & SHERWOOD**
                                  10205 North Pennsylvania Ave.
                                  Oklahoma City, OK 73120
                                  Telephone: (405) 235-1560
                                  Facsimile: (405) 239-2112
                                  Email: wbf@federmanlaw.com

                                  *Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2015, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

                                  /s/ William B. Federman
                                  William B. Federman

## APPENDIX 1

## PROPOSED SCHEDULE OF EVENTS

The Parties propose the following schedule of events leading to the Settlement

Hearing as set forth in the proposed Preliminary Approval Order submitted herewith:

| Event | Time for Compliance |
| --- | --- |
| Settlement Hearing | Approximately ninety (90) calendar days from entry of the Preliminary Approval Order  (Order ¶5) |
| Mailing of Notice of Proposed Settlement of Class Action and  Proof of Claim and Release ("Notice Date") | Fifteen  (14) calendar days after the entry of Order of Preliminary Approval (Order ¶10) |
| Publication of Summary Notice | Seven (7) calendar days after the Notice Date (Order ¶10) |
| Deadline for Objections | Twenty-one (21) calendar days prior to the Settlement Hearing (Order ¶22) |
| Deadline for Requests for Exclusion | Twenty-one (21) calendar days prior to the Settlement Hearing (Order ¶19) |
| Filing of memoranda in support of approval of the Settlement and Plan of Allocation, or in support of Lead Counsel's application for an award of attorneys' fees and expenses | Thirty (30) calendar days prior to the Settlement Hearing (Order ¶30) |
| Filing of reply memoranda in support of the Settlement and Plan of Allocation, or in support of Lead Counsel's application for an award of attorneys' fees and expenses | Seven (7) calendar days prior to the Settlement Hearing  (Order ¶30) |
| Last Date for Filing Proofs of Claim | Ninety (90) calendar days after Notice Date (Order ¶15) |