IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 12-cv-01038-CMA-CBS (Consolidated for all purposes with
Civil Action No. 12-cv-01521-CMA-CBS)

PATIPAN NAKKHUMPUN, on behalf of himself and others similarly situated,

     Plaintiff,

v.

DANIEL J. TAYLOR,

     Defendant.

---

## ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT (DOC. # 86)

---

The parties have requested preliminary approval of their proposed settlement of this securities fraud class action.  After careful consideration of the terms of the proposed settlement, the Court GRANTS Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (Doc. # 86).

## I.    BACKGROUND

Plaintiff Patipan Nakkhumpun's amended consolidated complaint alleges that Defendant Daniel J. Taylor violated section 10(b) of the Securities Exchange Act of 1934 (codified at 15 U.S.C. § 78j(b)) and Securities and Exchange Commission Rule 10b-5 (codified at 17 C.F.R. § 240.10b-5) by making materially false and misleading statements in a press release that was issued on July 7, 2010.  (Doc. # 80.)  Defendant Taylor was, at that time, the Chairman of the Board of Delta Petroleum Corporation ("Delta").

Earlier that year, Delta had announced a proposed deal in which Opon International, LLC ("Opon") would purchase a 37.5% interest in a certain set of Delta's petroleum assets for $400 million.  The deal was never completed.  Plaintiff alleges that Defendant Taylor stated in the July 7, 2010 press release that Delta terminated the proposed deal because Opon was unable to obtain financing.  Plaintiff asserts that this statement was false and that the real reason the deal fell through was because Opon's due diligence revealed that the assets were not worth near the $400 million sale price. On November 9, 2011, Delta announced that it had not received any offers to purchase the company or its assets and that the assets that were to have been bought in part by Opon were considerably impaired.  Following the November 9, 2011 announcement, Delta's share price lost $1.34 per share in value and closed at $0.71 per share on November 10, 2011—a one-day decline of 65%.

This case is back before the Court on remand following the Tenth Circuit's partial reversal of the Court's prior order granting dismissal of all claims against all defendants. (Doc. # 64.)  The Tenth Circuit found that Plaintiff's proposed amended complaint stated a valid securities fraud claim against Defendant Taylor for his statements in the July 7, 2010 press release.  The Tenth Circuit affirmed the dismissal of all other claims against all other defendants.

Instead of continuing to litigate the single claim against Defendant Taylor, the parties—including the previously dismissed defendants—entered into a stipulation of settlement.  (Doc. # 87-1.)  Under the terms of the proposed settlement, the class of Delta stock purchasers would receive a $3.2 million cash payment, which would be distributed to each claimant pursuant to a plan of allocation.  The settlement class would

include all persons who purchased Delta common stock during the period March 11, 2010, through November 9, 2011.  (Doc. # 87-1 at 12.)

More specifically, the parties seek preliminary certification of a settlement class consisting of:

> all persons who purchased Delta common stock during the period March 11, 2010 through November 9, 2011, inclusive. Excluded from the Settlement Class are Defendants, members of the immediate family of any Defendants, any entity in which any of the Defendants has or had a controlling interest, any entity for which any Defendant acted as an investment manager, former directors and officers of Delta and the legal representatives, heirs, successors, or assigns of any such excluded Person or entity.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice.

(Doc. # 87-1 at 12-13.)

In exchange for full release of the disputed claims in this litigation, Defendants will instruct their insurance carrier to pay the settlement amount of $3.2 million into a settlement fund.  (Doc. # 87-1 at 14.)  Plaintiff estimates that, if 100% of the eligible claimants submit claims, the average distribution per share would be approximately $0.31, not including the deduction of Court-approved attorney fees, costs, and expenses.  (Doc. # 89-1 at 3.)

The proposed settlement allows Plaintiff to use up to $100,000 from the settlement fund to pay the reasonable costs and expenses associated with the administration of the settlement, which includes identifying and notifying settlement class members.  (Doc. # 87-1 at 15.)  Plaintiff's counsel will ask the Court for attorney fees not to exceed 33% of the $3.2 million settlement fund.  (Doc. # 89-1 at 4.)  In addition, Plaintiff himself may request an award for the reimbursement of his costs and

expenses relating to his direct representation of the settlement class not to exceed $3,500.  (Doc. # 89-1 at 4.)  If the Court grants the full amount requested for attorney fees, costs, and expenses, the average cost per share will be approximately $0.11.  (Doc. # 89-1 at 4.)  Therefore, the actual distribution for each claimant—if all eligible claimants submit claims—would be approximately $0.20 per share.  (Doc. # 89-1 at 4.)

Class members seeking to remain in the class and recover from the settlement fund must properly execute and return a proof of claim and release form.  (Doc. # 86-1 at 34-38.)  Class members have the ability to object to the proposed settlement and be heard at the final fairness hearing.  (Doc. # 87-1 at 52.)  Persons who fall within the definition of class members may nevertheless choose to opt out of the settlement entirely, which means that they will not be bound by the terms of the settlement and they will not receive a distribution from the settlement fund.  (Doc. # 87-1 at 26-27.)  Any class member who does nothing will not receive a distribution from the settlement fund, yet such class member will be bound by the release of claims against Defendants.  (Doc. # 87-1 at 21-23.)  In addition, no distribution will be made to a class member if the distribution would be less than $10.00.  (Doc. # 87-1 at 64.)

The proposed claims administrator—Heffler Claims Group—will calculate the claims submitted by settlement class members and oversee distribution of the settlement fund.  (Doc. 87-1 at 47.)  If there is any balance remaining in the settlement fund after all claims, attorney fees, costs, expenses, and taxes have been paid, the remaining balance will be reallocated and redistributed among all class members who would receive at least $10.00 from such redistribution.  (Doc. # 87-1 at 29.)  Redistributions will be repeated until the balance remaining in the settlement fund is de

minimis and such remaining balance shall then be donated to an appropriate 501(c)(3)

non-profit organization designated by Plaintiff and approved by the Court.  (Doc. # 87-1

at 29.)  No part of the settlement fund shall revert to Defendants.  (Doc. # 87-1 at 29.)

## II.    STANDARD FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

Approval of a class action settlement takes place in two stages.  NEWBERG ON

CLASS ACTIONS § 13:12 (5th ed. 2015).  At the first stage, the Court preliminarily certifies

a settlement class, preliminarily approves the settlement agreement, and authorizes that

notice be given to the class so that interested class members may object to the

proposed terms of the settlement or opt-out of the settlement entirely.  *Id*.  At the second

stage, the Court holds a final fairness hearing, during which it hears any timely and

properly made objections to the proposed settlement and considers whether the

settlement should receive final approval.  *Id*. at § 13:42.

At the preliminary approval stage, one of the primary determinations the Court

makes is "whether notice of the proposed settlement should be sent to the class."  *Id*. at

§ 13:13.  The purpose at the preliminary approval stage is not to make a final

determination of the proposed settlement's fairness.  Thus, "the standard that governs

the preliminary approval inquiry is less demanding than the standard that applies at the

final approval stage."  *Id*.; *see also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo.

2006) ("The purpose of the preliminary approval process is to determine whether there

is any reason not to notify the class members of the proposed settlement and to

proceed with a [final] fairness hearing.").  If the proposed settlement is preliminarily

approved, the Court enters an order directing the parties to provide notice of the

proposed settlement to class members and setting forth a schedule for objections. NEWBERG at § 13:12.

Federal Rule of Civil Procedure 23 governs class certification.  Plaintiff bears the burden of proving that he has satisfied all of the requirements of Rule 23(a) and at least one of the prongs of Rule 23(b).  Under Rule 23(a), the Court may certify a class only where (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Under Rule 23(b)(3)—the subsection under which Plaintiff seeks class certification in this case—the Court may certify a class if the questions of law or fact common to the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

The Court must undertake a "rigorous analysis" to satisfy itself that the prerequisites of Rule 23 are met.  *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S. Ct. 2541, 2551 (2011); *Comcast Corp. v. Behrend*, --- U.S. ---, 133 S. Ct. 1426, 1432 (2013).  The determination of whether class certification is appropriate is vested in the sound discretion of the district court.  *Clay v. Pelle*, No. 10-cv-1840-WYD-BNB, 2011 WL 843920, at *1 (D. Colo. Mar. 8, 2011) (citing *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982)).  "[T]he Tenth Circuit has endorsed class actions as an appropriate means to resolve claims under the federal securities laws."  *Lerner v. Haimsohn*, 126

6

F.R.D. 64, 65 (D. Colo. 1989) (citing *T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.*, 717 F.2d 1330 (10th Cir. 1983)).

Under Federal Rule of Civil Procedure 23(e)(2), a class action settlement must be "fair, reasonable, and adequate."  In the Tenth Circuit, a court analyzes the following factors to determine whether this standard is met: (1) whether the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, such that the ultimate outcome of the litigation is in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  Although the Court will consider these factors in depth at the final fairness hearing, they provide a useful guide at the preliminary approval stage.  *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 680 (D. Kan. 2009).

### III. PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF THE SETTLEMENT

#### A. Preliminary Certification of the Settlement Class

Rule 23(a)(1) requires that the class be so numerous that joinder is impracticable.  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  "Plaintiffs must offer 'some evidence of established, ascertainable numbers constituting the class,' but there is 'no set formula to determine if the class is so numerous that it should be so certified.'"  *Colo. Cross-Disability Coal v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (quoting *Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)).

Delta common stock was traded nationally and, as of April 26, 2011, there were 286,027,476 shares issued and outstanding.  (Doc. # 87-4 at 3.)  The parties assert that millions of shares of Delta common stock were traded during the class period, and the proposed class of purchasers of Delta common stock during the class period "contains at least hundreds, if not thousands, of persons."  (Doc. # 86 at 11.)  In light of the number of shares of common stock issued by Delta and the parties' representation that the proposed settlement class would consist of perhaps thousands of individuals, each of whom has suffered a relatively small amount of damages, the Court preliminarily finds that the proposed settlement class satisfies Rule 23(a)(1)'s numerosity requirement.

Rule 23(a)(2) requires the presence of "questions of law or fact that are common to the class."  A plaintiff satisfies this requirement by showing a "common contention" that is "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.  "The claims of the class members need not be identical for there to be commonality; either common questions of law or fact will suffice."  *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 551 (D. Colo. 1998) (citation omitted); *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) ("Factual differences between class members' claims do not defeat certification where common questions of law exist.").  And "even a single common question will do." *Dukes*, 131 S. Ct. at 2556 (citations omitted).

As noted by the parties, this case involves several common issues of law and fact, including, for example, whether Defendant Taylor publically misrepresented and/or

omitted material facts in the July 7, 2010 press release, whether he acted with scienter, and whether the alleged false or misleading statements caused Delta common stock to trade at artificially inflated prices.  Thus, the Court preliminarily finds that the proposed settlement class satisfies the commonality requirement of Rule 23(a)(2).

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is satisfied if the claims of the named plaintiff and class members are "based on the same legal or remedial theory."  *Devaughn*, 594 F.3d at 1198-99.  "The positions of the named plaintiffs and the potential class members do not have to be identical."  *Schwartz*, 178 F.R.D. at 551.  Instead, "[s]o long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied."  *Id*.

The claims of Mr. Nakkhumpun—the proposed lead plaintiff—are typical of the claims of the other class members because they arise from the same course of conduct by Defendant Taylor and rest on the same legal theory—securities fraud.  Therefore, the Court preliminarily finds that the typicality requirement is satisfied.

Lastly, Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class."  To satisfy this requirement, "'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'"  *Tennille v. W. Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997)).  The class representative and class members "must share common objectives and legal or factual positions," but they need not be identical.  *Id*.  "[O]nly a conflict that goes to the

very subject matter of the litigation will defeat a party's claim of representative status."
*Id*. (alteration in original).

Proposed lead plaintiff is himself a member of the proposed class and he
suffered the same injuries as proposed class members.  Proposed lead plaintiff and his
counsel have the same interests and objectives as class members.  Therefore, the
Court preliminarily finds that proposed lead plaintiff and his counsel will fairly and
adequately protect the interests of the class.

Under Rule 23(b)(3), Plaintiff must show that "questions of law or fact common to
the members of the class predominate over any questions affecting only individual
members" and that a class action "is superior to other available methods for fairly and
efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The predominance inquiry "focuses on the question of liability."  *Maez v. Springs
Auto. Grp. LLC*, 268 F.R.D. 391, 397 (D. Colo. 2010).  "[I]f the liability issue is common
to the class, common questions are held to predominate over individual questions."  *Id*.
(citation omitted).  The purpose is to avoid a class action degenerating into a series of
individual trials.  This is a fact-specific analysis and will vary depending on the
circumstances of any given case.  *See* 7AA Wright & Miller, Federal Practice &
Procedure § 1783 (3d ed. 2015).

In determining predominance and superiority under Rule 23(b)(3), the Court
considers the following factors: (A) the class members' interests in individually
controlling the prosecution or defense of separate actions; (B) the extent and nature of
any litigation concerning the controversy already begun by or against class members;
(C) the desirability of concentrating the litigation of the claims in the particular forum;

and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

To certify a settlement class, the Court need not inquire whether the case, if tried, would

present difficult management problems under Rule 23(b)(3)(D).  *Amchem*, 521 U.S. at

620.

As stated above in the Court's analysis of Rule 23(a)(2), questions of law and

fact are common to the class.  The Court also preliminarily finds that, for purposes of

Rule 23(b)(3), these common questions of law and fact predominate over any questions

affecting only individual members.  The claims of all proposed class members sound in

securities fraud and are based on Defendant Taylor's alleged misrepresentations in the

July 7, 2010 press release.  As the United Supreme Court noted in *Amchem*,

"[p]redominance is a test readily met in certain cases alleging . . . securities fraud . . . ."

*Amchem*, 521 U.S. at 625.

In addition, the Court preliminarily finds that a class action is superior to other

methods of adjudication of this matter.  This case involves hundreds, if not thousands,

of geographically-dispersed investors, whose relatively small claims make it prohibitively

expensive to seek recovery through individual litigation.  Also, a separate lawsuit that

had been commenced by Delta stockholders has already been consolidated with the

matter pending before the Court.  Therefore, the Court preliminarily finds that the

predominance and superiority requirements of Rule 23(b)(3) are readily met in the

present case.

Because the Court preliminarily finds that the requirements of both Rule 23(a)

and Rule 23(b)(3) have been met, the Court preliminarily certifies the settlement class

as that settlement class is defined by the parties in the stipulation of settlement.  Plaintiff

Nakkhumpun is preliminarily appointed as lead plaintiff and Plaintiff's attorneys, Federman & Sherwood, are preliminarily appointed as class counsel.

### B.    Preliminary Approval of the Settlement

Under Federal Rule of Civil Procedure 23(e)(2), a class action settlement must be "fair, reasonable, and adequate."  As stated above, the Tenth Circuit has instructed trial courts to analyze the following factors to determine whether this standard is met: (1) whether the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, such that the ultimate outcome of the litigation is in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.  *Rutter*, 314 F.3d at 1188.

The Court preliminarily finds that the settlement in this matter was fairly and honestly negotiated.  Prior to reaching a settlement, the parties had been litigating this matter for over three years.  In that time, the parties conducted extensive factual investigations and thorough legal analysis, having fully briefed Defendants' motion to dismiss and the appeal of the Court's order granting that motion.  The parties have also consulted with experts and engaged in mediation early in the case with a retired United States district judge.  Thus, there is no doubt that the parties vigorously advocated their respective positions throughout the pendency of the case, and there is no indication of fraud or collusion that would have tainted the settlement negotiations.  *See Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997).

The Court also preliminarily finds that the parties themselves reasonably believe that the settlement is fair and reasonable.  Plaintiff's counsel is experienced in securities class action litigation (Doc. # 87-3), thus, the Court gives weight to its favorable

judgment as to the fairness and reasonableness of the proposed settlement. *See Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight"); *Saunders v. Berks Credit & Collections, Inc.*, No. 00-cv-3477, 2002 WL 1497374, at *10 (E.D. Pa. July 11, 2002) ("The Court is therefore deferential to the reasoned judgment of the well-informed attorneys.").

The Court also preliminarily finds that serious questions of law and fact exist, such that the ultimate outcome of the litigation is in doubt. As has already been stated, the Court initially dismissed all claims against all Defendants, but the Tenth Circuit reversed, finding that Plaintiff had stated a securities fraud claim against Defendant Taylor based on the statements in the July 7, 2010 press release. Defendant Taylor continues to contest all elements of Plaintiff's claim, particularly loss causation and damages. It is unclear whether Plaintiff's claim would survive a motion for summary judgment or, if the case were to proceed to trial, whether a jury would find in favor of Plaintiff.

Lastly, the Court preliminarily finds that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. The parties assert that the proposed settlement will provide class members with approximately 23% of Plaintiff's damages expert's most generous estimate of total compensable damages—$13.65 million. However, to receive this full damages award of $13.65 million, Plaintiff would have to prove at trial that Defendant Taylor committed securities fraud and that the entire $1.34 drop in share price in November 2011 was caused by Defendant Taylor's statements in the July 7, 2010 press release. Needless

to say, it would be difficult for Plaintiff to recover $13.65 million in damages in this case.

In addition, Plaintiff asserts that recovering 23% of this full damages amount is

approximately double the median recovery in securities fraud class action settlements

for the year 2014 and the period 2005 to 2013.  (Doc. # 86 at 10.)  Thus, the Court

preliminarily finds that the value of immediate recovery outweighs the mere possibility of

future relief after protracted and expensive litigation.

### C.    Notice to the Settlement Class

When a court certifies a class under Rule 23(b)(3), "the court must direct to class

members the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort."  That

notice "must clearly and concisely state in plain, easily understood language: (i) the

nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues,

or defenses; (iv) that a class member may enter an appearance through an attorney if

the member so desires; (v) that the court will exclude from the class any member who

requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the

binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P.

23(c)(2)(B).  Rule 23(e)(1) also mandates that when a court preliminarily approves a

proposed class action settlement, "[t]he court must direct notice in a reasonable manner

to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  In

addition, the Private Securities Litigation Reform Act ("PSLRA") requires that any

proposed settlement agreement include certain information regarding the amount of the

settlement, the amount that would be recoverable if the plaintiffs prevailed at trial, the

amount of attorney fees and costs that will be sought, and the contact information for

lead plaintiff's counsel.  15 U.S.C. § 78u-4(a)(7).

Plaintiff proposes two forms of notice in this matter: (i) a long-form notice (Doc. # 89-1); and (ii) a publication notice (Doc. # 87-1 at 81-84).  The long-form notice will be sent by mail to all identifiable class members at their last known address.  The publication notice will be published once in *Investor's Business Daily* and issued once electronically over *PR Newswire*.

After reviewing the content of the long-form notice, the Court notes one discrepancy between the information contained in the long-form notice and the stipulation of settlement entered into by the parties.  Section 2.3 of the stipulation of settlement states that lead counsel may receive "up to the sum of $100,000.00 from the Gross Settlement Fund to pay the reasonable costs and expenses associated with the administration of the Settlement."  (Doc. # 87-1 at 15.)  However, the proposed long-form notice states in the initial summary and in question 18 that lead counsel will seek reimbursement of out-of-pocket expenses not to exceed $98,500, to be paid from the settlement fund.  (Doc. # 89-1 at 4, 14.)  Therefore, before the long-form notice can be sent to the settlement class, Plaintiff must change the maximum amount to be awarded for reasonable costs and expense from $98,500 to $100,000.

In addition, the Court believes it is necessary to change the proposed date by which proof of claim forms must be filed.  The parties propose that such deadline be ninety (90) calendar days after the mailing of the long-form notice, which in turn, is proposed to occur fourteen (14) calendar days after the entry of this Order.  Because the parties suggest that the final fairness hearing be scheduled ninety (90) calendar days after the entry of this Order, it is clear that the parties contemplate that the deadline for filing proof of claim forms will be *after* the final fairness hearing.  However,

for the Court to analyze the proposed settlement at the final fairness hearing, it will be necessary to know the amount per share to be distributed from the settlement fund, which is dependent upon the number of proof of claim forms received.  Therefore, the deadline to file a proof of claim form will be no later than twenty-one (21) calendar days prior to the final fairness hearing.

Aside from these two changes, the Court finds that the proposed notices meet the requirements of both Rule 23 and the PSLRA.  The Court also finds that the method of notice is adequate and proper.

## IV.  CONCLUSION

The Court, having reviewed the proposed settlement, ORDERS:

1.  **Class Certification.**  The Court PRELIMINARILY CERTIFIES the settlement class as that settlement class is defined in the parties' stipulation of settlement.  The Court PRELIMINARILY APPOINTS Plaintiff Patipan Nakkhumpun as lead plaintiff and Federman & Sherwood as lead counsel.

2.  **Proposed Settlement.**  The Court PRELIMINARILY APPROVES the proposed settlement between the parties.

3.  **Notice.**  The Court APPROVES the form, content, and method of notice, on the condition that Plaintiff change in long-form notice the maximum amount that Plaintiff's counsel may be reimbursed for expenses from $98,500 to $100,000.  In addition, the notices will be changed to indicate that the deadline for the filing of proof of claim forms will be no later than twenty-one (21) calendar days prior to the date of the final fairness hearing.  Lastly, the date and time of the final fairness hearing shall be included in both the long-form notice and the publication notice before each is mailed and published, respectively.

16

4.      **Claims Administrator.**  Plaintiff is AUTHORIZED to retain Heffler Claims Group to supervise and administer the notice procedure and, if the settlement receives final approval, the processing of claims.

Not later than ten (10) calendar days after entry of this Order, Defendants shall use reasonable efforts to provide the claims administrator with an electronic and searchable list (if available) of Delta's registered shareholders, obtained from Delta's transfer records, at no cost to the settlement fund, lead counsel, or the claims administrator, in order to identify and provide notice to settlement class members.

Not later than fourteen (14) calendar days after the date of entry of this Order, the claims administrator, under the direction of lead counsel, shall cause a copy of the long-form notice and proof of claim form to be sent by first-class mail to all settlement class members who can be identified from transfer records and from other sources available to the claims administrator and lead counsel with reasonable effort ("Notice Date").

Not later than seven (7) days after the Notice Date, lead counsel shall cause the publication notice to be published once in the national edition of *Investor's Business Daily* and transmitted over the national circuit of *PR Newswire*.

Not later than seven (7) calendar days before the final fairness hearing, lead counsel shall serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing.

In addition, notice of the litigation and the proposed settlement shall be posted on the claims administrator's website.

5.      **Broker and Nominee Procedures.**  Brokers and nominees who purchased Delta stock during the class period for the benefit of another person shall send the long-form notice and proof of claim form to the beneficial owners of such Delta stock within ten (10) calendar days after receipt thereof, or send a list of the names and addresses of such beneficial owners to the claims administrator within ten (10) calendar days after receipt thereof, in which event, the claims administrator shall promptly mail a long-form notice and proof of claim form to such beneficial owners.

The claims administrator shall provide nominees with additional copies of the long-form notice and proof of claim form upon request.

Nominees may seek reimbursement of their reasonable administrative costs and expenses actually incurred in searching their records to find the names and addresses of beneficial owners and for mailing the long-form notice and proof of claim form by providing the claims administrator with proper documentation supporting the expenses for which reimbursement is sought.  Such properly documented expenses incurred by nominees in compliance with the terms of this Order shall be paid from the settlement fund in accordance with the provisions of the stipulation of settlement.

6.      **Participation in the Settlement.**  Settlement class members who wish to participate in the settlement and receive a distribution from the settlement fund must complete and submit a proof of claim form in accordance with the instructions contained therein.

Unless the Court orders otherwise, all proof of claim forms must be submitted no later than twenty-one (21) calendar days prior to the final fairness hearing.  Each proof of claim form shall be deemed to be submitted when postmarked, if received with a

postmark on the envelope and if mailed by first-class mail and addressed in accordance with the instructions therein.  In all other cases, the proof of claim form shall be deemed to have been submitted when it was actually received by the claims administrator. Notwithstanding the foregoing, lead counsel may, at its discretion, accept for processing late claims provided that such acceptance does not delay the final fairness hearing.

The proof of claim form submitted by each settlement class member must meet the following conditions: (1) it must be properly completed, signed, and submitted in a timely manner in accordance with the provisions of the prior paragraph; (2) it must be accompanied by adequate supporting documentation for the transactions reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by lead counsel and the claims administrator; (3) if the person executing the proof of claim form is acting in a representative capacity, a certification of his current authority to act on behalf of the settlement class member must be included in the proof of claim form; and (4) the proof of claim form must be complete and contain no material deletions or modifications of any of the printed matter contained therein, and must be signed under penalty of perjury.

Any settlement class member who does not submit a proof of claim form within the time provided or whose claim is not otherwise approved by the Court (1) shall be deemed to have waived his, her, or its right to share in the settlement fund and shall be barred from sharing in the distribution of the settlement fund; (2) shall be bound by the provisions of the stipulation of settlement and all proceedings, determinations, orders,

and judgments in this matter; and (3) will be barred from commencing, maintaining, or prosecuting any of the released claims against each of the defendants.

7.     **Exclusion from the Settlement Class.**  Any person falling within the definition of the settlement class may, upon request, be excluded from the settlement class.  Any such person must submit to the claims administrator a "Request for Exclusion," postmarked no later than twenty-one (21) calendar days prior to the final fairness hearing to the address specified in the notice.  A Request for Exclusion must be signed by such person or his, her, or its authorized representative and shall state: (1) the name, address, and telephone number of the person requesting exclusion; (2) the person's purchases and sales of Delta common stock made during the class period, including the dates, number of shares, and price paid or received per share for each purchase or sale; and (3) that the person wishes to be excluded from the settlement class.

Any person who properly opts out of the settlement class is not bound by the terms of the settlement and is not entitled to any distribution from the settlement fund.

8.     **Appearance and Objections.**  Settlement class members may enter an appearance in this litigation, at their own expense, either individually or through counsel of their choosing.  If a settlement class member does not enter an appearance, that settlement class member will be represented by lead counsel.

Attendance at the final fairness hearing is not mandatory.  Nevertheless, any settlement class member may appear at the final fairness hearing and speak in support of, or in opposition to, the fairness, reasonableness, and/or adequacy of the proposed settlement.  If a settlement class member wishes to speak at the final fairness hearing,

20

that person must file with the Court and serve on lead and defense counsel written support or objections, and any papers in support thereof, no later than twenty-one (21) calendar days before the final fairness hearing.

Such written support or objection to the proposed settlement must be signed and include the name, address, and telephone number of the person, the number of shares of Delta common stock purchased and sold during the class period with supporting proof of such purchases and sales, and the reasons for the support or objection to the proposed settlement.

9.      **Settlement Administration Fees and Expenses.**  All reasonable expenses incurred in identifying and notifying members of the settlement class, as well as administering the settlement fund, shall be paid as set forth in the stipulation of settlement without further order of the Court.  In the event the settlement does not receive final approval, or otherwise fails to become effective, neither lead plaintiff nor lead counsel shall have any obligation to repay any amounts actually and properly disbursed from the settlement fund for administration fees and expenses.

10.      **Taxes.**  Lead counsel is authorized and directed (1) to prepare any tax returns or other tax reporting forms for the settlement fund; (2) to pay from the settlement fund any taxes owed with respect to the settlement fund; and (3) to otherwise perform all obligations with respect to taxes without further order of the Court in a manner consistent with the provisions of the stipulation of settlement.

11.      **Further Briefing.**  All papers in support of the settlement, the application by lead counsel for reasonable attorney fees, and applications for reimbursement of expenses shall be filed no later than thirty (30) calendar days before the final fairness

hearing.  If reply papers are necessary, they shall be filed no later than seven (7) calendar days before the final fairness hearing.

12.     **Final Fairness Hearing.**  The final fairness hearing shall take place in Courtroom A602, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado 80294, on **Friday, February 19, 2016, at 2:00 PM**, during which the Court will consider whether the settlement (1) is fair, reasonable, and adequate; and (2) should receive the Court's final approval.


DATED: November 3, 2015                    BY THE COURT:

                                           _____
                                           CHRISTINE M. ARGUELLO
                                           United States District Judge