**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-01038-CMA-CBS (Consolidated for all purposes with
Civil Action No. 12-cv-01521-CMA-CBS)

PATIPAN NAKKHUMPUN, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

DANIEL J. TAYLOR,

      Defendant.

_____

**PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT
OF LITIGATION EXPENSES AND REIMBURSEMENT AWARD TO LEAD PLAINTIFF
AND MEMORANDUM OF LAW IN SUPPORT**

_____

      Lead Plaintiff Patipan Nakkhumpun ("Plaintiff") and Lead Counsel submit this Memorandum of Law in Support of Plaintiff's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement Award to Lead Plaintiff. Plaintiff and Lead Counsel move this Court for: (1) an award of attorneys' fees to Lead Counsel equal to 33% of the Settlement Fund, plus any interest accrued; (2) reimbursement of litigation costs and expenses in the amount of $82,486.68, incurred by Lead Counsel in successfully prosecuting the claims in this action (the "Litigation"); and (3) a reimbursement award of $3,500 to Lead Plaintiff for his efforts expended in this Litigation and achieving this favorable resolution for the benefit of the Class.

      Submitted herewith is the Declaration of William B. Federman in Support of Plaintiff's (1) Unopposed Motion for Final Approval of Settlement and Plan of Allocation and (2) Unopposed Motion for Attorneys' Fees, Reimbursement of Litigation Expenses

and Reimbursement Award to Lead Plaintiff (the "Federman Decl." or "Federman Declaration") and the exhibits thereto.

## I.   INTRODUCTION

Lead Counsel Federman & Sherwood, with the assistance of Lead Plaintiff, have succeeded in obtaining a favorable settlement consisting of $3.2 million in cash for the benefit of the Class.  The Settlement is the result of Lead Counsel's extensive and thorough investigation, skill and effective advocacy, with Plaintiff's oversight and involvement.  Lead Counsel believe that the Settlement is an excellent result, especially considering the risk, expense, and delay of continued litigation.  The $3.2 million Settlement compares favorably with the relevant benchmarks for comparable litigation. In fact, the proposed Settlement of $3.2 million provides a sizable recovery that amounts to approximately 23% of Plaintiff's damages expert's <u>most aggressive estimate of aggregate damages</u> ($13.65 million), which far exceeds historical median settlement recoveries as a percentage of estimated damages in securities class actions of this size.

Lead Counsel prosecuted this case on a contingency basis, committed substantial resources to the matter, and litigated it without any compensation or guarantee of success. Similar fee requests have been approved repeatedly by this Court in settlements of this magnitude.  Through January 27, 2016, Lead Counsel has spent 1,695.20 hours, a lodestar value of $965,320, litigating this case and has expended $82,486.68 in out-of-pocket expenses.  Federman Decl. at ¶¶ 57, 75.  If approved, the fee requested will be a very modest multiplier of 1.09 of Lead Counsel's lodestar.  *Id.*  The expenses requested are reasonable, were necessarily incurred for the successful prosecution of the Litigation, and are of the kind regularly reimbursed by courts within this Circuit.

Copies of the Notice and Proof of Claim Form ("Notice Packet") have been disseminated to 24,459 potential Class Members stating that Lead Counsel would apply for an award of attorneys' fees not to exceed 33% of the $3.2 million Settlement Fund, expenses not to exceed $100,000, including interest incurred on both amounts, and a reimbursement award to Lead Plaintiff in the amount of $3,500. Federman Decl. at ¶¶ 46-51. No Class Member has filed an objection to these requests.[1] *Id.* at ¶ 73. The favorable response of the Class further supports the reasonableness of the requested fee and expense award and the reimbursement award to the Lead Plaintiff.

## II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

In the interest of brevity, for a history of the factual and procedural background of the Litigation and the events that led to the Settlement, Lead Counsel refers the Court to the: (1) Federman Declaration; and (2) Plaintiff's Unopposed Motion for Final Approval of Settlement and Plan of Allocation and Memorandum of Law ("Motion for Final Approval").

## III.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE AWARDED

Lead Counsel requests an award of attorneys' fees in the amount of 33% of the $3.2 million common fund they obtained for the Class. As discussed below and in the accompanying Federman Declaration, the request is fair and reasonable.

### A.   The Standard for Awarding Attorneys' Fees in the Tenth Circuit

It is well-settled that when attorneys have "created a 'common fund' from which the plaintiff class obtained a benefit," "[a]ttorneys' fees are appropriately awarded from

---

[1] Three objections to the Settlement were received, but no objections were received to the requests for fees, reimbursement of expenses, or reimbursement award to Lead Plaintiff. See Federman Decl. at ¶ 73 for a discussion of the objections.

that fund, on the theory 'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'" *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The Tenth Circuit has instructed that attorneys' fees in common fund cases ordinarily should be based on a percentage of the fund available to the class.  *Gottlieb,* 43 F.3d at 487.

At the same time, however, the Tenth Circuit has held that a court also should consider "'the specific factors traditionally used to calculate the lodestar'" to assess the reasonableness of a common fund fee award, referring specifically to the 12 factors developed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).[2]  *Id.* at 482-83.  Thus, the Tenth Circuit has adopted a "'hybrid' approach" to approving fees from a common fund. *Id.*; *see also.* While the *Johnson* factors should be addressed, "rarely are all the *Johnson* factors applicable; this is particularly so in a common fund situation."[3] *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849,

---

[2] The *Johnson* factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee . . . ; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-21).

[3] The following *Johnson* factors do not pertain to this Litigation: a prearranged fee, time limitations imposed by the client or the circumstances, and the nature and length of the professional relationship with the client. Thus, Plaintiff will not analyze these factors.

854 (10th Cir. 1993).   Thus, in common fund cases where it is determined that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing a recovery, the "results obtained" factor is particularly important and may be elevated above others in determining a reasonable fee.  *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *3 (D. Colo. Dec. 22, 2010).

      **B.    Analyses Under the Percentage-of-the-Fund Method, the Lodestar Method and the *Johnson* Factors Support Counsel's Fee Request**

        **1.    A Percentage Fee of 33% is Reasonable in this Litigation**

     This Court has found that "'the customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class." *Lucken*, 2010 WL 5387559 at *5 (citing *Anderson v. Merit Energy Co.*, Nos. CIV 07-916-LTB, CIV 07-1025-REB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009)) (same); *see also Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D.Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3 of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit"); *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *15 (W.D. Okla. Oct. 27, 2008) ("Fees in the range of at least one-third of the common fund are frequently awarded in class action cases. . . ."); *Childs v. Unified Life Ins. Co.*, 2011 WL 6016486, at *15 (N.D. Okla. Dec. 2, 2011) (same).  Indeed, "courts have recognized that '[t]he percentages

awarded in common fund cases typically range from 20 to 50 percent of the common fund created[,]' and that fees within this range are 'presumptively reasonable.'" *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (citations omitted). Thus, a survey of fee awards in securities class actions with comparable recoveries in courts within this Circuit indicates that the requested 33% fee is fair and reasonable.[4]

### 2.    Time and Labor Involved

#### a.    Labor Dedicated By Counsel Justifies the Requested Fee

An analysis of the time and labor factor supports the request for attorneys' fees. Here, Counsel spent over three years and 1,695.20 hours in prosecuting this litigation. Counsel spent significant time and effort thoroughly investigating the case, assessing the strengths and weaknesses of the claims and defenses and effectively and efficiently settling the Litigation on terms highly favorable to the Settlement Class. In this regard, Counsel (1) examined the Company's voluminous public filings, press releases and other publicly available documents, conducted a thorough investigation that included interviewing former Delta employees and the CEO of Opon International, Inc. ("Opon"), (2) filed an 87 page amended complaint in the consolidated action, (3) fully briefed an

---

[4] *See, e.g., Shaw.,* 2015 WL 1867861, at *6 (awarding 33$^{1/3}$% of $6 million settlement fund); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (awarding fees and costs of 39% of total fund and finding such an award "within the normal range for a contingent fee award"); *Droegemueller v. Petroleum Dev. Corp.*, 2009 WL 961539, at *3 (D. Colo. Apr. 7, 2009) (awarding fees of one-third of settlement); *Hershey v. ExxonMobil Oil Corp.*, 2012 WL 5306260, at *8 (D. Kan. Oct. 26, 2012); *Lewis v. Wal-Mart Stores, Inc.*, 2006 WL 3505851, at *1-2 (N.D. Okla. Dec. 4, 2006) (awarding fees of 33$^{1/3}$% and finding such fees reasonable); *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.,* 2009 WL 2836508, at *3 (W.D. Okla. July 30, 2009) (approving fee of 40% of $10.5 million fund); *Lewis v. Wal-Mart Stores, Inc.*, 2006 WL 3505851, at *1-2 (N.D. Okla. Dec. 4, 2006) (awarding 33$^{1/3}$% of $5,097,606.87 settlement fund).

opposition to the motion to dismiss filed by Defendants, (4) filed and fully briefed a motion for leave to amend that included a 106 page proposed amended complaint, (5) fully briefed and argued an appeal of the Court's dismissal of Plaintiff's claims, including fully briefing Defendant Taylor's petition for rehearing *en banc,* which resulted in the partial reversal of the Court's dismissal order by the Tenth Circuit, (6) briefed an opposition to Defendant Taylor's motion to bifurcate discovery, (7) conferred with executives at Par Petroleum Corporation (Delta's successor entity following the bankruptcy) regarding document retention and production, (8) prepared document requests, and (9) fully considered and partially briefed a response to Defendant Taylor's petition for *writ of certiorari* in the United States Supreme Court.  Finally, Lead Counsel participated in protracted, adversarial settlement negotiations where the terms of the settlement were thoroughly debated and negotiated, which involved extensive consultations with Plaintiff's financial experts regarding loss causation and damages.

        **b.**    **The Lodestar Analysis Supports Counsel's Fee Request**

Courts in this Circuit, and throughout the country, typically apply multipliers ranging between 2 to 5 times lodestar to compensate counsel for the high risk of contingent representation in complex class actions such as securities fraud class actions.  *See, e.g., In re Miniscribe Corp.,* 309 F.3d 1234, 1245 (10th Cir.2002) (affirming fee award based on a lodestar multiplier of 2.57); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002) (listing 23 settlements with multipliers in which the average multiplier is 3.21), *cert. denied*, 123 S.Ct. 536 (2002); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("Most lodestar multiples awarded in cases like this [i.e., complex cases where the risk of establishing liability is great] are

between 3 and 4.") (collecting cases); *In re Computron Software, Inc.,* 6 F.Supp.2d 313 (D.N.J. 1998) (applying, in securities fraud class action, lodestar test as cross check for common fund recovery and finding 2.5 multiplier "fair"); *In re Oppenheimer Champion Income Fund Sec. Fraud Class Action,* No. 09–cv–386–JLK–KMT, slip op. (D.Colo. Sept. 30, 2011) (awarding a fees amounting to a 4.6 multiplier) (attached hereto as Exhibit 1); *In re Core Bond Fund,* No. 09–cv–1186–JLK–KMT, slip op. (D.Colo. Sept. 30, 2011) (awarding a fee equal to a 4.2 multiplier) (attached hereto as Exhibit 2).

Based on the 1,695.20 hours spent prosecuting the Litigation, Lead Counsel's lodestar amounts to $965,320.  *See* Federman Decl. ¶ 57.  The 33% fee sought by Lead Counsel represents a modest multiplier of 1.09 times Lead Counsel's lodestar.  This multiplier is certainly reasonable and well within the range of multipliers typically awarded by courts in similar litigation. *Shaw*, 2015 WL 1867861, at *8 ("The requested $2 million fee award represents a lodestar multiplier of 1.37 which is significantly lower than lodestar multipliers that Colorado federal courts and other courts consistently have approved in other class action cases.") (collecting cases); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (finding  multiplier of 1.18 "to be imminently reasonable based on the risks associated with counsel taking on this case"); *see, e.g., In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *4 (D. Colo. Sept. 18, 2014) (finding the requested fee creating a lodestar multiple of 1.23 was "well below what courts in this District typically award in collective actions" and concluding that "the lodestar cross check supports the requested fee award"); *Lucas v. Kmart Corp.,* 2006 WL 2729260 at *9 (D.Colo. July 27, 2006) (finding lodestar multiplier of 1.87 in the cross-check analysis was reasonable).

Considering the outstanding result achieved here by Lead Counsel, approving a fee request with a corresponding lodestar multiplier of 1.09 is appropriate.

### 3.    Difficulty of the Questions and the Results Obtained

An analysis of the second and eighth *Johnson* factors, the novelty and difficulty of the issues and the results obtained, also favors granting Counsel's request for attorneys' fees.  "There are few simple class action cases involving securities law.  This area of law may not be novel, but it generally is complex and difficult."  *In re Qwest Comm Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1149 (D. Colo. 2009). Just the pre-filing investigation and drafting of complaints in order to file a sufficient complaint under the PSLRA required substantial effort and expertise, given the complexity of securities class action litigation.

Success in contingent litigation such as this is never guaranteed. In some cases, plaintiff's counsel in securities litigation have spent years in litigation, expending thousands of attorney hours and millions of dollars, only to receive no compensation. "Doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation."  *See Qwest*, 625 F. Supp. 2d at 1138.  Here, Lead Counsel faced a number of hurdles that could have resulted in a smaller recovery or possibly no recovery.

Up until the time Plaintiff achieved the Settlement, Defendant Taylor denied liability on the grounds that the statements regarding Opon were accurate and therefore not materially false or misleading.  Defendant Taylor also challenged whether Settlement Class members were damaged by the allegedly false statements, and if so, the extent of any such damages, with Defendant's expert estimating potential damages in the range of $0 and $5 million and with Plaintiff's expert estimating <u>maximum *potential* damages</u> of

$13.65 million.   Resolution of these conflicting estimates of damages would require complex issues of proof.   *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, at 1047 (N.D.Cal. 2008).   Indeed, the Court has already recognized that "it would be difficult for Plaintiff to recover $13.65 million in damages in this case."  Preliminary Approval Order at 14.   Additionally, in securities fraud cases, a favorable jury verdict is far from certain. *See id.* (noting that "[p]laintiffs have won only three of eleven [securities fraud] cases to reach verdicts since 1996").   Thus, the unresolved factual and legal issues could have resulted in little or no recovery were it not for the Parties having reached the Settlement. Even a victory at the trial stage is not a guarantee of success. *See, e.g., Robbins v. Koger Props.*, Inc., 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81.3 million won by class plaintiffs, after approximately seven years of litigation, and rendering judgment for defendant).[5]   Thus, Lead Counsel "reasonably conclude[d] that there are serious questions of law and fact that could significantly impact" the case, making settlement a favorable alternative to continued litigation.  *Lucas*, 234 F.R.D. at 693-94.

Despite those significant obstacles, Counsel obtained a substantial recovery for the Settlement Class.  The $3.2 million Settlement allows the Settlement Class to recover 23% of the maximum possible damages of $13.65 million, which is *double* the median recovery in securities fraud class action settlements in cases of this size for the year 2014 and the period 2005 to 2013.  Federman Decl. ¶ 42.  Counsel have been instrumental in

---

[5] *See also In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants after five years of litigation); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. 2000) (granting defendants' motion for judgment as matter of law after verdict for plaintiffs).

obtaining the fair, reasonable, and adequate fund of $3.2 million, which was only possible following a hard-fought appeal.  Accordingly, this Court may give greater weight to this factor.  *Brown*, 838 F.2d at 456 (finding that the "results obtained" factor may be given greater weight in a common fund case where the court determines that the recovery "was highly contingent and the efforts of counsel were instrumental in realizing recovery of behalf of the class.").

### 4.      Skill Required and the Experience, Reputation, and Ability of the Attorneys

Analyses of the third and the ninth *Johnson* factors, the skill required and the experience, reputation, and ability of the attorneys, further supports the requested fee award. *Qwest*, 625 F. Supp. 2d at 1149 ("Particularly in a case as complex as this [securities class action]…[t]his factor carries significant weight because the plaintiff class likely would not have obtained any relief without the assistance of counsel with a high level of skill and expertise."). Lead Counsel have successfully prosecuted and resolved numerous securities class actions and other complex litigation throughout the country and have a strong reputation in this field.  *See* Federman Decl. at Exhibit 4 (firm resume).  In securities class actions, "Lead counsel must have a very high level of experience and expertise if the plaintiffs are to have any chance of success."  *Qwest*, 625 F. Supp 2d at 1150.  Indeed, Counsel's skill is reflected in the outstanding settlement obtained in the face of substantial obstacles.

### 5.      The Contingent Fee and Preclusion of Other Employment by the Attorneys Weigh in Favor of Granting the Requested Fees

Courts in this Circuit have found that "the risk of non-recovery" weighs heavily in considering an award of attorneys' fees.  *Vaszlavik v. Storage Technology Corp.*, 2000

WL 1268824, at *4 (D.Colo. March 9, 2000); *see also Qwest*, 625 F. Supp. 2d at 1149 (noting that contingent fee "is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful"). Counsel pursued this Litigation on a wholly contingent basis and, accordingly, Counsel faced a significant risk that they would not receive anything for their efforts after many years of litigation; the significance of the contingency risk may be reflected in the fee awarded. While the Litigation here was successfully resolved, Lead Counsel dedicated more than three years of their professional resources and incurred substantial expenses in its pursuit and have received no payment in return. Thus, preclusion of other employment by Counsel due to acceptance of this case, the fourth *Johnson* factor, weighs in favor of the fee request.

### 6. The 33% Fee is in Line with Customary Fees and Awards in Other Cases

The percentage method of awarding fees in class actions is designed to "closely match[] the methodology actually employed in the marketplace" where attorneys typically negotiate percentage fee arrangements with their clients. *Gottlieb*, 43 F.3d at 484. Thus, courts have reasoned that "[i]n private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients," making "these percentages the prevailing market rates throughout the United States for contingent representation." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007); *see Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) *report and recommendation adopted*, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) ("The requested fee of 33% is at the market rate which the Class could have negotiated at the beginning

of this matter. One-third of the recovery is considered standard in a contingency fee agreement."). The requested 33% award is also consistent with awards in similar cases. *See Shaw*, 2015 WL 1867861, at *6 ("[C]ourts have recognized that '[t]he percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created[,]' and that fees within this range are 'presumptively reasonable'") (citation omitted); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("Class Counsel's request for 33% of the Fund is reasonable and consistent with the norms of class litigation…."); *see also* Section III.B.1, *supra* (discussing awards in similar cases).

### 7.    Undesirability of the Case

This factor may carry substantial weight, in cases such as this one, where counsel faces significant financial risk which many attorneys would be unwilling or unable to take on. *See Qwest*, 625 F. Supp. 2d at 1153. In fact, cases of this type can often cost many hundreds of thousands if not millions of dollars to prosecute. *See, e.g., id.* at 1149 (D. Colo. 2009) (costs exceeded $2 million). Here, that financial risk was exacerbated by the relatively small amount of potential damages—with Plaintiff's expert estimating *maximum possible damages* to be only $13.65 million—relative to the amount of resources required to effectively prosecute the Litigation. Although pursuing such litigation may be rewarding, it does not come without counsel assuming the substantial risk of investing large quantities of resources and receiving little or no recovery whatsoever.

### 8.    Reaction of Requested Fee by the Settlement Class

Although not specifically cited as a factor for consideration by the Tenth Circuit, courts recognize the significance of the Settlement Class Members' reaction to the request for attorneys' fees and expenses. *See Qwest*, 625 F. Supp. 2d at 1149. Here,

despite the dissemination of 24,459 copies of the Notice, not a single member of the Settlement Class has filed an objection as to the fees requested by Counsel.  Federman Decl. at ¶ 73.  Therefore, Counsel respectfully submits that the absence of any objections to Counsel's request for attorneys' fees and expenses strongly supports the fee request. *See Anderson*, 2009 WL 3378526, at *4 ("The absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees."); *Millsap v. McDonnell Douglas Corp.,* 2003 WL 21277124, *14 (N.D.Okla.) (small number of objections to attorneys' fees supported approval thereof).

## IV. THE REQUESTED REIMBURSEMENT OF LITIGATION COSTS IS REASONABLE

Lead Counsel also respectfully seek reimbursement of $82,486.68 in litigation expenses reasonably and necessarily incurred in prosecuting the Litigation. Federman Decl. at ¶¶ 55-60; Nakkhumpun Declaration, Exhibit 5 to Federman Decl.  Lead Counsel would not be reimbursed for any of these expenses unless and until the Litigation was successfully resolved.  The Federman Declaration itemizes the various categories of expenses incurred. *Id.* at ¶ 57.  A significant amount of the expenses was for experts and independent service providers, including investigators, whose services Lead Counsel required to successfully prosecute and resolve this Litigation.  *Id.*  Lead Counsel also incurred significant expenses for photocopying, filing, and online factual and legal research.  *Id.*  These expenses were a necessary part of an action of this magnitude and scale, and were essential to achieving the Settlement.

Because the expenses incurred by Lead Counsel are of the type routinely approved in class actions and were essential to the successful prosecution and resolution of the Litigation, the Court should grant reimbursement of the expenses. *See Vaszlavik*,

2000 WL 1268824, at *4 (awarding $309,252 in expenses and recognizing that "an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred."); *see also* 15 U.S.C. §78u-4(a)(6) (providing that reasonable expenses may be awarded to class counsel in cases brought pursuant to the PSLRA).

## IV.   THE REIMBURSEMENT AWARD SHOULD BE GRANTED

Finally, under the PSLRA, the Court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Lead Plaintiff respectively requests a reimbursement award of $3,500 for time and effort he has expended on behalf of the Class. Lead Plaintiff spent a significant amount of time representing the Settlement Class throughout the course of the litigation and incurred such costs and expenses. *See* Federman Decl. at Exhibit 5 (Nakkhumpun Declaration). The time, effort and expense he committed was encouraged by Congress in enacting the PSLRA and was of great help in bringing about the highly beneficial Settlement. The amount requested is reasonable and should be approved by the Court.

## V.   CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court approve Counsel's application for attorneys' fees and costs as well as the reimbursement award to Lead Plaintiff.

Dated: February 1, 2016        Respectfully submitted,

        /s/ William B. Federman
        William B. Federman
        **FEDERMAN & SHERWOOD**
        10205 North Pennsylvania Ave.
        Oklahoma City, OK 73120
        Telephone: (405) 235-1560
        Facsimile: (405) 239-2112
        Email: wbf@federmanlaw.com

        *Lead Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2016, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

        /s/ William B. Federman
        William B. Federman